John F. PERRY, et al., Plaintiffs,

v.

Edward L. GAMMON, et al.,
Defendants.

Civ. A. No. C83–1075A.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 16, 1984.

Stuart J. Roth, Arnold F. Ernst, Atlanta, Ga., for plaintiffs.

Carl S. Rauh, Gloria B. Solomon, Washington, D.C., Ben F. Johnson, III, Atlanta, Ga., for Beltway Management, Inc., for defendants.

### ORDER

SHOOB, District Judge.

This is an action alleging violations of federal securities laws and asserting pendent state law claims. Defendants allegedly defrauded plaintiffs by successive sales of the same four apartment complexes to different buyers. Plaintiffs are four Georgia limited partnerships that purchased the four apartment complexes, as well as their general and limited partners. Plaintiffs claim that the sales of real estate coupled with contracts for management of the properties constituted the sales of investment contracts, bringing the transactions within the federal securities laws.

Defendant Beltway Management, Inc., managed the apartment complexes for other defendants. Beltway moved to dismiss the claims against it under Rules 12(b)(6) and 9(b), Fed.R.Civ.P. Because the motion depended upon materials not solely in the pleadings, the Court decided to treat the motion as being for summary judgment and deferred ruling so that the parties could submit additional materials. Order of September 29, 1983. At that time the

Court suggested to plaintiffs that they amend their pleadings to withstand Beltway's objections concerning failure to plead fraud with particularity.

The Court now considers Beltway's motion for summary judgment or, in the alternative, for dismissal. Beltway argues that plaintiffs' claims fail on two principal grounds: the sale of apartment complexes did not involve securities, and plaintiffs have not stated with particularity, despite an additional opportunity afforded them by the Court, any participation by Beltway in the allegedly fraudulent transactions. The Court agrees with Beltway upon both points.

*Apartment Complexes as Securities*

■ The threshold issue in this action is whether the sale of apartment complexes to the limited partnerships involved "investment contracts" that would bring the transactions within the domain of the federal securities laws. The Supreme Court has defined "investment contract" as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1102–03, 90 L.Ed. 1244 (1946). *See also United Housing Foundation v. Forman*, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). Plaintiffs claim that the purchase of the apartment complexes involved investment contracts because, among other things, plaintiffs intended to rely upon the expertise of Beltway, which had previously been management agent for the complexes, in managing the properties. Because plaintiffs expected profits from Beltway's efforts and not their own, they argue, they entered into investment contracts.

Two precedents binding on this Court have addressed the issues raised by plaintiffs. In *Williamson v. Tucker*, 645 F.2d 404 (5th Cir.1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981), and *Gordon v. Terry*, 684 F.2d 736 (11th Cir.1982), *cert. denied*, 459 U.S. 1203, 103 S.Ct. 1188, 75 L.Ed.2d 434 (1983), the former Fifth [1] and the Eleventh Circuits discussed the requirement of *Howey* that an investor depend upon the entrepreneurial or managerial skills of a promoter or other party in order to establish an "investment contract" within the ambit of the securities laws.

In *Williamson*, which considered whether joint venture or partnership interests were securities,[2] the former Fifth Circuit stated:

> We must emphasize … that a reliance on others does not exist merely because the partners have chosen to hire another party to manage their investment. The delegation of rights and duties—standing alone—does not give rise to the sort of dependence on others which underlies the third prong of the *Howey* test. An investor who retains control over his investment has not purchased an interest in a common venture "premised on the reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others," even if he has contracted with the vendor for the management of the property. So long as the investor retains ultimate control, he has the power over the investment and the access to information about it which is necessary to protect against any unwilling dependence on the manager. It is not enough, therefore, that partners in fact rely on others for the management of their investment; a partnership can be an investment contract only when the partners are so dependent on a particular manager that they cannot replace him or otherwise exercise ultimate control.

645 F.2d at 423–424 (citations omitted).

In *Gordon*, which involved syndications for real estate development, the Eleventh

---

1. The Eleventh Circuit has held that the decisions of the Fifth Circuit prior to September 30, 1981, are binding as precedent in the Eleventh Circuit unless overruled by the new court sitting en banc. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981).

2. Although the case at bar involves partnerships, the nature of partnership interests is not at issue here. *See* footnote 3, *infra*.

Circuit reviewed the standard set in *Williamson*. Commenting on the earlier case, the Eleventh Circuit said:

> The Court [in *Williamson*] carefully delineated the circumstances which would create the sort of dependency contemplated by investment contract analysis. The fact that the investor has delegated management duties or has chosen to rely on some other party does not establish dependency. The investor must have "no reasonable alternative to reliance on that person." That is, the investor must be "forced to rely on some particular non-replaceable expertise." As an example, the Court indicated that "investors may be induced to enter a real estate partnership on the promise that the partnership's manager has some unique understanding of the real estate market in the area in which the partnership is to invest."

*Gordon v. Terry*, 684 F.2d at 741–742 (citations omitted). Under *Williamson* and *Gordon*, therefore, the limited partnerships in this case have entered into investment contracts only if they do not retain ultimate control over their investments, have no alternative to reliance upon Beltway, and are unable to protect themselves against unwilling dependence on Beltway. The Court must examine the evidence in the record on the relationship between the limited partnerships and Beltway.[3]

Each contract for sale of the apartment complexes, drafted by attorneys for plaintiffs, includes the following provision:

> *Section 15.1* Effective on the date hereof, Buyer shall have the right to name the managing agent who shall administer and operate the Project and shall have the right to require that the agent as a fiduciary for Seller and Buyer receive all rents, issues and profits from the Project, pay all Project expenses incurred in the ordinary course of business,.... Such managing agent may be an entity or affiliate partially or wholly-owned by Seller or Buyer. The Management Agreement shall provide that Buyer on thirty (30) days prior written notice may terminate the agreement.

This appears to make clear that the partnerships retained the ultimate authority for selecting the manager of their properties. In spite of the contractual language, plaintiffs claim that they and Beltway had other expectations. John Perry, general partner of the partnerships and lead plaintiff, states the following in his affidavit:

> 4. Since Plaintiffs were to be absentee owners and had no experience in managing apartment complexes, they relied on Defendants' representations that Defendant Beltway would stay on and continue to manage the properties. I was even shown a copy of the current management agreement with Beltway and told it was "part of the deal"....
>
> 5. Having a manager experienced in managing the properties was an integral and material part of the entire transaction for I had no intention of managing said buildings, nor did I have the ability to do so.
>
> 6. Defendants Gammon & Joy each assured me that Beltway would stay on as manager.
>
> 7. I believe I was reasonable in believing this for I did not think Beltway expected to be terminated upon sale of the properties.

In addition, plaintiffs argue the following in their memorandum in opposition to the motion to dismiss:

> Certainly, ... Plaintiffs did not intend to manage the complexes themselves. In addition, Defendant Beltway was manag-

---

**3.** The transactions at issue in this case are sales to the limited partnerships. The case does not concern the individual transactions between the partners and the partnerships. Accordingly, the Court's concern is whether the sales to, and purchases by, the *partnerships* involved investment contracts or securities. Whether the individual partners' stakes in the partnerships involved securities is not before the Court and does not affect the determination whether the sales to the partnerships involved securities. Therefore, the Court will examine the dependence of the partnerships which purchased the properties, not of the individual partners who shared in the partnerships.

ing the complexes at the time the sale to plaintiffs was consummated. Thus, participation of the defendants, in their continuing managerial role became part of a package deal which helped induce the plaintiffs to purchase the complexes. Beltway's expertise combined with the fact that they were doing a good job in managing the complexes was an integral part of the sale. This factor, along with the fact that plaintiffs lived in a state away from where the complexes were located, showing no intention on the part of the plaintiffs to manage the complexes themselves, meets the test of relying upon significant efforts of others to turn a profit.

Plaintiffs' memorandum at 12–13.

The plaintiffs purchased the complexes and at the same time affirmed Beltway's contract to manage the apartments. Beltway's agreement to continue in its managerial role was an integral part of the plaintiffs' decision to purchase the complex. The agreement was, in essence, part of a package deal.

*Id.* at 15–16.

These statements fall short of showing the dependence required to convert an ordinary sale of real estate into a securities transaction. There is nothing in the record to create an issue that the partnerships had "no reasonable alternative to reliance" on Beltway, that they were "forced to rely on some particular non-replaceable expertise," or that they were induced to enter a transaction on the promise that Beltway had "some unique understanding" of the nature of the investment. On the contrary, the evidence and the arguments show nothing more than that the partners found that Beltway had expertise and was doing a good job, and that they therefore decided to retain it to manage the apartment complexes on behalf of the partnerships. Plaintiffs saw themselves in a position to affirm Beltway's position as management agent, and the sales contracts gave the partnerships the power to disaffirm the management agreement upon short notice.

The partnerships in fact retained ultimate control of their investments.

In short, the partners' clear preference of Beltway as management agent and the attractive opportunity of retaining Beltway as manager of the apartment complexes under their new ownership do not transform the sales to the partnerships into securities transactions. To hold otherwise would convert into a securities transaction almost any sort of real estate investment where the investors delegate management of the properties.

Because plaintiffs have failed to adduce evidence to raise an issue of dependence under *Howey, Williamson,* and *Gordon* sufficient to support a claim that the transaction involved investment contracts or securities, plaintiffs' securities claims must fail, and they are left with only state law claims. Because jurisdiction over those claims depends on the federal claims that now fail, the Court will dismiss them as well.

### Allegations of Fraud

Even if the Court did not grant summary judgment to Beltway on the grounds stated above, the Court would still have to dismiss the action for failure to allege fraud with particularity.

The complaint lumps together allegations about all the defendants, and only occasionally identifies actions of particular defendants. The only allegation that specifically concerns Beltway is that Beltway made untrue or misleading statements of material facts. Complaint ¶ 40. Never does the complaint, or anything else filed by plaintiffs, specify what statements Beltway ever made or what facts gave rise to a duty of Beltway to make any statements. In addition, the complaint alleges only in general terms that the defendants conspired or aided and abetted each other in violating the securities laws. *Cf. SEC v. Cable/Tel Corp.*, 90 F.R.D. 662, 664 (S.D.N.Y.1981) (failure to identify statements constituting fraud and blanket allegations against "defendants" without particularizing each defendant's role rendered complaint inadequate). Nowhere does the complaint or

any other submission of plaintiffs specify an agreement or any substantial assistance by Beltway that would make it liable as a co-conspirator or an aider-abettor. *Cf. Friedlander v. Nims,* 571 F.Supp. 1188, 1191–92 (N.D.Ga.1983) (Shoob, J.) (conclusive claim of "conspiracy" without alleging factual elements of a conspiracy was insufficient).

Beltway called attention to these shortcomings of the complaint in its original motion to dismiss. When the Court decided to treat the motion as being for summary judgment and invited the parties to submit additional materials, the Court also invited plaintiffs to amend their complaint to withstand Beltway's challenge. The Court stated that Rule 9(b), Fed.R.Civ.P., would be strictly applied when the motion was considered. After the Court's order, plaintiffs moved to amend the complaint, but the three amendments offered by plaintiffs do not concern Beltway.

The Court finds that the complaint does not give Beltway fair notice of the allegations of fraud made against it. It is not enough that Beltway know what rules and statutes it is alleged to have violated; Beltway is entitled to know the basic facts—the who, what, when, where—of the fraud that plaintiffs claim it conducted. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1297 at 403–4 (1969). The most that plaintiffs have alleged is that other defendants represented facts about Beltway that induced plaintiffs to engage in the transaction. Because plaintiffs have not specifically alleged what Beltway itself did, or how Beltway was under an obligation to do anything, and because they have therefore not shown with particularity the "circumstances constituting fraud," Rule 9(b), Fed.R.Civ.P., their complaint must fail.

*Conclusion*

For the reasons stated above, the Court GRANTS the motion of defendant Beltway Management, Inc., for summary judgment and DISMISSES the pendent state law claims; in the alternative the Court also GRANTS the motion of defendant Beltway Management, Inc., to dismiss the claims against it for failure to plead fraud with particularity.