650 F.2d 627
 Blue Sky L. Rep. P 71,708, Fed. Sec. L. Rep. P 98,407
Ernest H. WHITE and Mary Ellen White, et al.,
Plaintiffs-Appellants, Cross Appellees,
v.
Prentice SANDERS (Edna E. Sanders, as Executrix of the
Estate of Prentice Sanders, substituted in place
and stead of Prentice Sanders,
Deceased), Defendant-Appellee,
Cross Appellant.
 No. 79-2149.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 July 13, 1981.
 John A. Owens, Barrie Balzli Stokes, Tuscaloosa, Ala., for plaintiffs-appellants, cross-appellees.
 Fite, Davis & Fite, James K. Davis, Hamilton, Ala., for defendant-appellee, cross appellant.
 Appeals from the United States District Court For the Northern District of Alabama.
 Before JONES, FAY and HENDERSON, Circuit Judges.
 HENDERSON, Circuit Judge:
 
 
 1
 On May 24, 1977, Ernest H. White and Mary Ellen White filed a complaint in the United States District Court for the Northern District of Alabama against the appellee, Prentice Sanders, alleging fraud under Alabama law and violations of § 10(b) of the Securities & Exchange Act of 1934, 15 U.S.C.A. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. In the following weeks, virtually identical actions were instituted against Sanders by James N. McGee and his wife Betty Jean, and Ora Mae Reeves who sued on her own behalf and in her capacity as Administratrix of the Estate of L.C. Reeves. All of these suits arose in connection with the plaintiffs' investments in National Account Service Administration, Inc., an Alabama corporation. The three cases were consolidated for trial, and resulted in a jury verdict in favor of Sanders. Having previously moved for a directed verdict, the plaintiffs, appellants on appeal, filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial. The district judge granted a new trial, explaining that the verdict was against the great weight of the evidence and that he had erroneously admitted into evidence certain prejudicial material.
 
 
 2
 A verdict for Sanders in the second trial again precipitated a motion for judgment notwithstanding the verdict or in the alternative for a new trial. On March 19, 1979, the district court issued a memorandum opinion acknowledging that Sanders had sold securities, that he received compensation for selling the securities and that he failed in his duty to disclose this fact to the appellants. The judge also noted that the appellants would not have participated in the sale of the securities but for Sanders' activities, and that this was a fact about which reasonable minds could not differ. Nevertheless, he denied the motion for judgment n.o.v. because he found that the statute of limitations applicable to the federal securities claims had run prior to the filing of the three actions. It is only this latter determination with which we are concerned on this appeal.
 
 
 3
 Our analysis begins with repetition of the well-settled principle that, because the federal securities laws contain no statute of limitations which is expressly applicable to private actions under § 10(b) and Rule 10b-5, a federal court must adopt the limitations period which the forum state applies to the state cause of action bearing the closest substantive resemblance to the implied cause of action arising under the federal provisions. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); McNeal v. Paine, Webber, Jackson & Curtis, Inc., 598 F.2d 888 (5th Cir. 1979); Hudak v. Economic Research Analysts, Inc., 499 F.2d 996 (5th Cir. 1974). Here, the apparent choice is between the one-year "catch-all" limitations period which Alabama follows in common law fraud actions, Ala. Code § 6-2-39, and the two-year period applicable to actions under the Alabama "blue sky" law, Ala. Code § 8-6-19(e).[1] The district court opted for the one-year statute of limitations. Since the appellants were apparently aware of Sanders' purported misrepresentations in March of 1976, more than one year prior to the filing of the complaints in May and June of 1977, the court held that the actions were barred. We reverse because we conclude that the state blue sky law bears the closer substantive resemblance to § 10(b) and Rule 10b-5, and that, accordingly, the application of its specifically-prescribed limitations period, rather than the "catch-all" provision relating to general fraud actions, better effectuates the federal policy involved.
 
 
 4
 The district judge chose to use the common law fraud limitations period because he found essentially three features which distinguished the Alabama blue sky statute from the federal securities laws.[2] As one such distinction, he noted that § 10(b) and Rule 10b-5 provide redress for defrauded purchasers and sellers of securities, whereas the Alabama blue sky law allows recovery by purchasers only.[3] However, this difference alone has never been of controlling significance, especially where, as here, the suit is brought by the purchaser. See Dupuy v. Dupuy, 551 F.2d 1005, 1023-24 n. 31 (5th Cir. 1977); Forrestal Village, Inc. v. Graham, 551 F.2d 411, 414 (D.C. Cir. 1977); Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 408 (2d Cir. 1975).
 
 
 5
 Another factor which influenced the district judge's decision was his observation that the statute of limitations prescribed by the state blue sky law runs from the date of sale. In contrast, he reasoned, both federal law and the Alabama law governing actions for fraud provide that the commencement of the limitation period awaits discovery of the purported misrepresentation. See Ala. Code § 6-2-3. This distinction, though technically valid, is not persuasive. For regardless of which state statute of limitations is adopted, a federal court is bound to follow the federal rule as to "when the clock starts running." Azalea Meats, Inc. v. Muscat, 386 F.2d 5, 8 (5th Cir. 1967).
 
 
 6
 The final and most compelling consideration underlying the district judge's decision is the element of scienter which is now undeniably required in Rule 10b-5 actions after the Supreme Court's opinion in Ernst & Ernst v. Hochfelder, supra. Common law fraud actions similarly demand proof of scienter, whereas § 8-6-19(a)(2) of the Alabama blue sky statute allows recovery for mere negligence in connection with the sale of a security. The district court reasoned that the solidification of the scienter requirement was sufficient to discredit the authority of pre-Hochfelder decisions such as Hudak v. Economic Research Analysts, supra, where this court elected to apply the limitation period prescribed by the Florida blue sky statute to a 10b-5 action. The Hudak opinion was based largely on the circumstance that, at that time, both the Florida courts and this circuit had "relaxed such traditional notions of scienter and evil purpose in actions brought under their respective securities regulation provisions." 499 F.2d at 1000 (citation omitted). Since the federal position regarding scienter has now come full circle, the district judge held that a common law fraud cause of action is more akin to a private action brought pursuant to Rule 10b-5 than is the cause of action available under the Alabama securities laws.[4]
 
 
 7
 The scienter distinction is indeed significant and deserves consideration. Nevertheless, when confronted with analagous situations and given the equivalent choice, this court has applied state blue sky law limitations periods in its post-Hochfelder decisions. See Dupuy v. Dupuy, supra; Nortek v. Alexander Grant & Co., 532 F.2d 1013 (5th Cir. 1976). Of particular relevance is Judge Wisdom's reasoning in Dupuy :
 
 
 8
 The Louisiana law prohibits only misrepresentations by sellers, and it measures the conduct of defendants against a negligence standard of care. Even with these distinguishing features, however, the Blue Sky statute still bears a closer resemblance to Rule 10b-5 than a catch-all provision dealing with the variety of offenses and quasi offenses in the Louisiana Code.
 
 551 F.2d at 1024 n. 31.[5]
 
 9
 Although our last two ventures into this area have resulted in rejection of the blue sky limitations period, the scienter factor was not dispositive in either case. Indeed, for reasons which we will explain, we believe that each of these recent decisions rests on circumstances and considerations which do not control our present choice.
 
 
 10
 In McNeal v. Paine, Webber, Jackson & Curtis, Inc., 598 F.2d 888 (5th Cir. 1979), the four-year limitations period applicable to actions brought under Georgia's general fraud statute was accepted over the two-year period prescribed by the Georgia blue sky law. However, McNeal involved a suit for damages against a broker for alleged "churning" of the plaintiff's account. The now-obsolete Georgia securities law before the panel was simply not conducive to such a cause of action. The following excerpt reveals the rationale behind the McNeal holding and simultaneously explains its inapplicability to the present case:
 
 
 11
 In concluding that the cause of action available under Georgia's general fraud statute, rather than that available under the Georgia Securities Act of 1957, most closely resembles the 10b-5f cause of action relied upon here, we find determinative the fact that McNeal seeks damages against a broker, on account of alleged churning of his account, and does not seek rescission from an actual purchaser or seller of securities. Although the language of section 11 of the Georgia Securities Act of 1957 mimics that of Rule 10b-5 in prohibiting employment of "any device, scheme or artifice to defraud," the remedy made available by section 13 is expressly limited to an action for rescission by a purchaser against a seller. As such, the remedy is ineffective to a 10(b) plaintiff such as McNeal, who was allegedly injured by Paine, Webber's actions as an agent rather than as a principal. For that reason, McNeal could not frame his action as one for rescission. Although McNeal sought damages in an amount equal to the total decline in value of his account during the period in which the churning allegedly occurred, and thus sought restoration to the status quo ante, the normal effect of rescission, it is not clear that in a churning case damages of that sort are available. Any similarity between the damages remedy available to McNeal under section 10(b) and the rescission remedy available under the Georgia Securities Act of 1957 is therefore, at best, uncertain. By contrast, there is no reason to doubt that Georgia's general fraud statute would support an action for money damages based on the churning of McNeal's account.
 
 
 12
 598 F.2d at 893-94 (emphasis added; citation and footnotes omitted). In the instant case, the appellants' suit is against an alleged principal in the sale of securities. They apparently seek the return of their investments, a rescission-type remedy allowable under Ala. Code § 8-6-19(a). Although they also assert a right to compensatory damages in connection with their claims under § 10(b) and Rule 10b-5, this factor alone should not dictate the McNeal result.
 
 
 13
 The post-Hochfelder scienter problem was acknowledged in a footnote to the McNeal opinion. 598 F.2d at 895 n. 18. Nonetheless, because it was unclear whether the Georgia securities statute in question carried a scienter requirement, the court expressly declined to base its decision on that reason.
 
 
 14
 In a quite recent opinion dealing with this subject matter, Wood v. Combustion Engineering, Inc., 634 F.2d 339 (5th Cir. 1981), a panel of this court again decided against application of the state blue sky law limitations period. Wood involved a choice between the two-year statute of limitations applicable to actions brought under the Texas general fraud statute, Tex.Bus. & Comm.Code § 27.01 (1968), and the three-year statute governing actions under Texas' "old" blue sky law, Tex.Rev.Civ.Stat. 581-33 (1964).
 
 
 15
 Judge Brown, writing for the panel, first noted that the Texas general fraud statute specifically called for proof of reliance, whereas the blue sky law under consideration did not. In this respect, he stated: "While the precise extent of the reliance requirement under 10b-5 is not entirely clear, we nevertheless find it to more closely approximate the explicit reliance requirement of the general fraud statute." At 345. Further, the Texas blue sky law, like the Alabama statute here, did not require scienter, whereas "some Texas cases do require proof of scienter to establish actionable fraud." Id. A footnote explained that the scienter distinction, although not necessarily dispositive, was a relevant and significant factor in the court's ultimate determination. Id. n. 19. Judge Brown then went on to identify several additional bases "which do not bear as much weight," concluding the discussion of the statute of limitations issue as follows:
 
 
 16
 First, we observe that not only does the Blue Sky law permit plaintiffs to prevail against defendants without establishing scienter, but further that the Act denies defendants a "due diligence" defense. Second, the Blue Sky law, by its express terms, is available only to purchasers, while 10b-5 and the general fraud statute give both sellers and purchasers a cause of action. Additionally, the Blue Sky law requires that there be a tender of the security as a prerequisite to recovery while 10b-5 and general fraud have no such requirement.
 
 
 17
 For one or more of all of these reasons we find the action under the Texas general fraud statute to more closely resemble the action under 10b-5 and thus, we apply a two-year limitations period to Appellants' federal securities claim.
 
 
 18
 At 346 (citations omitted).
 
 
 19
 Arguably, most of the considerations contributing to the Wood decision apply with equal force here. Nevertheless, we simply do not believe that the Texas laws construed in Wood and the Alabama laws at issue here offer comparable or equivalent choices.[6] Section 27.01, the Texas fraud statute under examination in Wood, specifically addresses "(f)raud in a transaction involving real estate or stock in a corporation or joint stock company " Thus, it is perhaps at the outset a more appropriate and apparent choice than is the general common law fraud cause of action available in Alabama. On the other hand, the Texas blue sky statute is of less obvious suitability than its Alabama counterpart. The 1964 version of Art. 581 contained no precise 10b-5 analogue. Section 8-6-17 of the Alabama blue sky statute tracks the language of Rule 10b-5 and, moreover, purchasers of securities clearly have a private cause of action for its violations.[7] As a consequence, the appellants' federal cause of action and that available to them under the state securities law could hardly be more analogous.
 
 
 20
 Consequently, after examining these myriad considerations, we remain of the opinion that an action under the Alabama blue sky, and not a common law fraud cause of action, bears the closest substantive resemblance to the implied right of action arising under § 10(b) and Rule 10b-5. Those features which do distinguish the Alabama and federal securities laws are, we believe, outweighed by their greatest similarity an undeniable "commonality of purposes." See, e. g., O'Hara v. Kovens, 625 F.2d 15 (4th Cir. 1980); Carothers v. Rice, supra; Morris v. Stifel, Nicolaus & Co., Inc., 600 F.2d 139 (8th Cir. 1979); Forrestal Village, Inc. v. Graham, supra. The Fourth Circuit's reasoning in O'Hara v. Kovens is fitting in our case as well. The Maryland blue sky law, like the Alabama statute involved here, does not require scienter. Also, at the time the O'Hara cause of action accrued, the Maryland blue sky law did not provide a civil remedy for defrauded sellers a much more crucial difference in that case because the plaintiffs were sellers rather than purchasers. The court held that neither of these distinctions outweighed "the simple truth that the federal and state statutes at issue here were designed to achieve similar ends." 625 F.2d at 18. "By comparison, the shared purposes between § 10(b) and common law fraud are generalized at best." Id. Accord, Forrestal Village, Inc., v. Graham, supra.
 
 
 21
 For the foregoing reasons, we conclude that the two-year statute of limitations prescribed by the Alabama blue sky law governs the timeliness of the appellants' actions against Sanders. We reverse and remand so that the district court may reconsider the motion for judgment n. o. v. or in the alternative for a new trial in light of the appropriate limitations period. Since the merits of the case were not properly before us, the district court correctly denied Sanders' motion to compel the appellants to order the transcript and include it in the record on appeal.
 
 
 22
 REVERSED and REMANDED.
 
 
 
 [1]
 Unless otherwise indicated, all state statutory references are to the Alabama Code of 1975
 
 
 [2]
 Judge McFadden's reasoning is gleaned from his prior memorandum opinion in First Federal Savings & Loan Ass'n. of Miami v. Mortgage Corp. of the South, 467 F.Supp. 943 (N.D.Ala.1979), which is also presently on appeal
 
 
 [3]
 Ala. Code § 8-6-19 provides in pertinent part:
 (a) Any person who:
 (1) Sells or offers to sell a security in violation of any provision of this article or of any rule or order imposed under this article or of any condition imposed under this article, or
 (2) Offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know and in the exercise of reasonable care could not have known of the untruth or omission, is liable to the person buying the security from him who may bring an action to recover the consideration paid for the security, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest of six percent per year from the date of disposition.
 (e) No person may bring an action under this section more than two years after the contract of sale
 By virtue of the language of § 8-6-19(a)(1), a purchaser is afforded a cause of action for violations of § 8-6-17, which in turn tracks the language of Rule 10b-5:
 It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly, to:
 (1) Employ any device, scheme or artifice to defraud;
 (2) Make any untrue statement of a material fact or to omit to state a material fact, necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or
 (3) Engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.
 
 
 [4]
 The appellants question the contrast drawn by the district court because one section of Alabama's general fraud statute specifically allows a cause of action for innocent, as well as intentional, misrepresentations. Ala. Code § 6-5-101 states that "(m)isrepresentations of a material fact made wilfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." In light of this provision, the appellants maintain that the one-year statute of limitations, which governs all Alabama fraud actions, is not logically related to the scienter requirement. However, the focus of our inquiry is still on the substantive resemblance of the various causes of action. Since another Alabama statutory provision clearly retains the scienter requirement in its codification of common law fraud, see Ala. Code § 6-5-103, we must determine whether a general fraud cause of action which does embody the scienter element is most analogous to an action under § 10(b) and Rule 10b-5
 
 
 [5]
 We also note that the Seventh Circuit, which had not required scienter prior to Hochfelder, continues to apply blue sky law statutes of limitations in the wake of that decision. Cf. Parrent v. Midwest Rug Mills, 455 F.2d 123 (7th Cir. 1972), with LaRosa Building Corp. v. Equitable Life Assurance Society, 542 F.2d 990 (7th Cir. 1976)
 
 
 [6]
 The unfortunate necessity for a state-by-state analysis in pursuit of this "essentially esoteric" inquiry was recognized in both McNeal and Wood
 
 
 [7]
 See n. 3, supra. Accord, Carothers v. Rice, 633 F.2d 7 (6th Cir. 1980), where for quite similar reasons the Sixth Circuit, which had always chosen the statute of limitations governing common law fraud cases when considering Michigan and Ohio laws, applied Kentucky's blue sky law limitations period to a 10b-5 action