Herman **FRIEDLANDER**, individually on behalf of himself and all former minority common shareholders of Nimslo Technology, Inc., Plaintiff,

v.

**TROUTMAN, SANDERS, LOCKERMAN & ASHMORE, Defendant.**

**Civ. A. No. C84–208A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Oct. 15, 1984.

Henry A. Brachtl, New York City, Edward L. Greenblatt, Atlanta, Ga., for plaintiff.

John T. Marshall, Thomas S. Richey, Robert L. Connelly, Atlanta, Ga., for defendant.

## ORDER

SHOOB, District Judge.

This is an action for alleged fraud by defendant in connection with the forced sale of stock owned by plaintiff. Defendant served as the law firm of certain defendants in a related case, *Friedlander v. Nims*, 571 F.Supp. 1188 (N.D.Ga.1983); plaintiff alleges that defendant participated in the fraudulent schemes of the defendants in the *Nims* case.[1] Count I asserts a claim for a violation of section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.-10b–5; Count II asserts a claim under the Georgia Securities Act; and Count III asserts a state common-law claim.

Plaintiff has filed a motion "to simplify issues and to determine that a four-year statute of limitations is applicable to the case at bar." Defendant has filed a motion for summary judgment on the ground that Counts I and II are time-barred and that Count III fails to state a claim. Defendant has also moved to strike the affidavit of plaintiff filed in response to defendant's summary judgment motion.

■ As a preliminary matter, the Court notes that, although state practice allows motions to strike affidavits, *see Malloy v. Cauley*, 169 Ga.App. 623, 624–5, 314 S.E.2d 464 (1984), this Court does not entertain them. As Judge O'Kelley stated:

[A] motion to strike is only appropriately addressed toward matters contained in the pleadings, Fed.R.Civ.P. 12(f), and affidavits submitted in support of a motion are clearly not within that category. Regardless of the practice followed in other forums, this court does not sanction the use of a rule 12(f) motion for the advancement of objections to an affidavit filed in support of a motion. It is sufficient for the party opposing the motion to register its objection to the movant's affidavits by way of the material submitted in opposition to the motion. The court will then implicitly, if not explicitly, rule upon these objections in its consideration of the motion.

*Smith v. Southeastern Stages, Inc.*, 479 F.Supp. 593, 594–5 (N.D.Ga.1977) (citations omitted). The same rule applies with regard to affidavits in opposition to a motion. *See Best v. County of DeKalb*, Civil Action No. C79–476A slip op. at 1 n. 1 (N.D.Ga. March 2, 1984) (Shoob, J.). The Court will therefore deny defendant's motion to strike.

## FEDERAL SECURITIES CLAIM

The Court next addresses the issues raised by plaintiff's motion to simplify issues and defendant's motion for summary judgment. The questions, simply put, are whether a two-year or four-year limitations period applies and, if a two-year period applies, whether there is sufficient evidence of tolling to bar summary judgment for defendant. Defendant urges the Court to apply the two-year limitation created by the Georgia Securities Act to plaintiff's claim. Plaintiff argues that a four-year limitation, which governs state law actions for fraud and deceit, should apply instead.

■ A threshold issue is whether after *Diamond v. Lamotte*, 709 F.2d 1419 (11th Cir.1983), there is a uniform two-year limitations period on all Rule 10b–5 claims in Georgia. Defendant suggests that there is. The Court concludes that there is not.

Recent decisions by the Eleventh Circuit and its predecessor,[2] taken together, are

---

**1.** The Court denied leave to amend the complaint in the *Nims* case to include this defendant. *See Friedlander v. Nims*, Civil Action No. C82–1900A, slip op. (N.D.Ga. Jan. 6, 1984). As a result, plaintiff instituted this separate action.

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as precedent all decisions of the Fifth Circuit handed down before October 1, 1981. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), the court adopted all decisions of the Fifth Circuit Unit B handed down after September 30, 1981.

not clear as to whether Rule 10b–5 actions in any one state have a single limitations period. In *McNeal v. Paine, Webber, Jackson & Curtis*, 598 F.2d 888 (5th Cir.1979), the court of appeals considered the statute of limitations question in the context of the particular claim presented. The court sought a limitations period "in regard to McNeal's claim." 598 F.2d at 892. The court of appeals then chose the state cause of action most resembling "the 10b–5 cause of action relied upon here." 598 F.2d at 894. The court went on to discuss the limitations period "applicable to McNeal's section 10(b) claim," 598 F.2d at 895. In selecting the limitations period applicable to the same plaintiff's claim under section 7, the court of appeals focused upon "McNeal's claim," *id.*, "McNeal's asserted cause of action," *id.*, and "McNeal's implied cause of action." 598 F.2d at 896.

The court finished its study of the statutes of limitations by saying "we conclude that the four-year period of limitations applicable to actions under Georgia's general fraud statute is applicable to the implied causes of action alleged here.... " *Id.* The court then acknowledged that the procedure it followed created "divergent results" from other cases, and explained that divergence as "compelled by the established rule of law." *Id.* It is clear that the court of appeals did not intend to fashion a period of limitations for all Rule 10b–5 actions: the focus was strictly upon the selection of a limitations period appropriate to plaintiff's claim, and the court never even implied a broader rule.

A later case, *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339 (5th Cir.1981), appears to have proceeded on the assumption that a single limitations period would apply to all Rule 10b–5 actions within a state. The court of appeals referred to limitations applicable to "actions under 10b–5 in Texas," 643 F.2d at 343, "10b–5 actions in Texas," *id.*, "a 10b–5 action in Texas," 643 F.2d at 344, and "the action under 10b–5." 643 F.2d at 346. There is no suggestion that the limitations period might be different in different types of Rule 10b–5 cases.

In *White v. Sanders*, 650 F.2d 627 (5th Cir. Unit B 1981), the court of appeals appeared to state a rule applicable to all Rule 10b–5 actions in Alabama. The court compared the state blue sky *law* with section 10(b) and Rule 10b–5, without explicitly distinguishing among types of claims. *See id.* at 629–632. The court concluded that "an action under the Alabama blue sky, and not a common law fraud cause of action, bears the closest substantive resemblance to the implied right of action arising under § 10(b) and Rule 10b–5." 650 F.2d at 632. Nevertheless, in its discussion of *McNeal* and the distinction drawn between *McNeal* and *White*, the court implicitly acknowledged that particular "circumstances and considerations" might cause different results in different cases. *White*, 650 F.2d at 631.

*Diamond v. Lamotte*, now the leading case in this circuit regarding statutes of limitations in Rule 10b–5 actions, carefully limited its analysis of the statute of limitations to the particular Rule 10b–5 action before it. The court of appeals looked for a state-law analogue to the "federal claim" and "the cause of action asserted by plaintiff," 709 F.2d at 1422; it discussed "this action," *id.*, "the Section 10(b) action relied upon here," 709 F.2d at 1424, and "the cause of action asserted here." *Id.* Nowhere in *Diamond* does the court of appeals state or even imply that its analysis applied to *all* Rule 10b–5 actions.

Although these four cases vary, the Court concludes that *McNeal* and *Diamond* reveal the correct analysis. *Diamond*'s constant focus upon the plaintiff's *claim* and its emphasis on the *method* of determining limitations periods, discussed below at 1449, show that no single, inflexible rule is appropriate. Instead, the court must in every case apply the limitations period appropriate to the particular claim before it.

This conclusion is consistent with numerous decisions of the old Fifth Circuit that the plaintiff's claim in each case is the proper focus of attention in the choice of state statutes of limitations for federal ac-

tions. As the Fifth Circuit stated in the leading case generally addressing "borrowed" statutes of limitations,

> We look first to federal law to determine the nature of the claim and then to state court interpretations of the state's "statutory catalogue" to see where the claim fits into the state scheme.

*Beard v. Stephens,* 372 F.2d 685, 688 (5th Cir.1967). This makes clear that a court must, in every case, consider state law in the context of plaintiff's particular claim.

The Court resists the temptation of drawing an analogy between federal and state statutes rather than between federal and state claims merely for the sake of convenience. One federal statute may create a number of different claims that would be treated differently under state law. This is true, for instance, of 42 U.S.C. §§ 1981 and 1983; different limitations periods apply to actions under them according to the different types of wrong alleged. *See generally* Annot., 45 A.L.R.Fed. 548 (1979); Annot., 29 A.L.R.Fed. 710 (1976). Even different counts within the same action are subject to different limitations. *See Scarlett v. Seaboard Coast Line Railroad Co.,* 676 F.2d 1043, 1050–1 (5th Cir. Unit B 1982) (different limitations for claims for damages and equitable relief in the same section 1981 claim); *Whatley v. Department of Education,* 673 F.2d 873, 875–8 (5th Cir. Unit B 1982) (same); *Beard v. Stephens,* 372 F.2d 685, 690 (5th Cir. 1967) (different limitations on different section 1983 claims for damages arising out of the same set of circumstances). As the Fifth Circuit stated in *Beard,*

> Federal policy neither requires nor allows the federal courts to define the nature of the action in one mold for purposes of determining the statutory period and another mold for determining what parties are liable and for what.

372 F.2d at 690. It does not suffice merely to find a state *law* generally analogous to a federal *law* relied upon by a plaintiff when the analogy does not apply to plaintiff's specific claim. To do that would, contrary to *Beard,* cast the nature of plaintiff's action in inconsistent molds for limitations and liability purposes.

Because the Court must determine the appropriate statute of limitations in Rule 10b–5 actions on a case-by-case, or claim-by-claim, basis, the Court now investigates the analogous state-law options available to plaintiff.

The Eleventh Circuit restated in *Diamond* the proper method of ascertaining the analogous state-law claims and the appropriate limitations period:

> First we categorize this action as a Georgia court would had this action or a similar action been brought in state court. In so categorizing the action, we compare the essential elements of the federal cause of action with those available choices under state law, looking not only to the elements of the anal[o]gous actions but also the similarity of purposes behind the actions. Second, the state categorization of the action and concomitant limitations periods are applied unless the categorization or limitation period is inconsistent with federal policy.

709 F.2d at 1422.

As the court explained, "[t]he essential elements to be compared, as gleaned from *McNeal, Wood,* and *White,* are scienter, reliance, and the relief available to this plaintiff against the persons from whom relief is sought." *Diamond,* 709 F.2d at 1423. Guided by *Diamond,* this Court will examine plaintiff's available choices under state law, paying particular attention to the relief available to this plaintiff against this defendant under the suggested state laws, the existence of scienter and reliance as elements under the laws, and the purposes of the laws. The Court will then determine whether the limitations period suggested by that investigation is inconsistent with federal policy.

*Plaintiff's available choices under state law*

The Court first examines the Georgia Securities Act, suggested by defendant as offering an analogy to plaintiff's federal securities claim. Section 12 of the Act, Official Code of Georgia Annotated § 10–

5–12 (Michie 1982),[3] specifies unlawful practices. Subsection (a) outlaws certain behavior in connection with the offer or sale of any security. Subsection (b) forbids certain representations of approval or recommendation by the state commissioner of securities. Subsection (c) prohibits false or misleading statements in filings with the commissioner of securities. Subsection (d) makes unlawful certain fraudulent schemes or acts that would defraud or deceive a purchaser or seller of securities.

Section 14 of the Georgia Securities Act, O.C.G.A. § 10–5–14, concerns civil liability for violation of certain provisions of section 12. Subsections (a) and (b) of section 14 create liability for violations of subsection (a) of section 12. Subsection (c) of section 14 bars suit *under section 14*, in other words under the civil liability provisions for violations of section 12(a), more than two years after the date of the unlawful sale of securities. Subsection (d) of section 14 provides for survival of actions brought under the Georgia Securities Act. Subsection (e) of section 14 provides that the Georgia Securities Act does not preempt any statutory or common-law rights with regard to acts involving securities.

Plaintiff would have no remedy under section 14 of the Georgia Securities Act because that section creates civil liability only for violations of section 12(a); and nothing within plaintiff's Rule 10b–5 claim would correspond to a violation of section 12(a).

Plaintiff's Rule 10b–5 claim alleges, instead, what would be a violation of section 12(d) of the Georgia Securities Act, which is an adaptation of Rule 10b–5.[4] However, as the Eleventh Circuit observed, no cause of action is expressly provided for its violation. *Diamond v. Lamotte*, 709 F.2d 1419, 1423 (11th Cir.1983), and this Court has found no Georgia case addressing the viability of a claim founded directly upon section 12(d).

Under the general fraud and deceit statutes, O.C.G.A. §§ 51–6–1 and 51–6–2,[5] suggested by plaintiff as analogous, plaintiff

---

3. The Court must apply the statute of limitations that existed at the time the action accrued. *Diamond v. Lamotte*, 709 F.2d 1422 n. 3. All the relevant state laws in this case remain the same as in 1980, when the cause of action arose; but the Georgia statutes have been recodified, resulting in new numbers for the old statutes. For ease of reference only, the Court employs the new code numbers for the statutes. The following table shows the different numbers of the sections discussed in this order:

| O.C.G.A. (Michie 1982) | Ga.Code Ann. (Harrison 1981) |
|---|---|
| 9–3–31 | 3–1002 |
| 10–5–12 | 97–112 |
| 10–5–14 | 97–114 |
| 51–1–8 | 105–104 |
| 51–6–1 | 105–301 |
| 51–6–2 | 105–302. |

The subsection designations remain the same in both codes.

4. O.C.G.A. § 10–5–12(d) states: "It shall be unlawful for any person in connection with the offer, sale, or purchase of any security, directly or indirectly: (1) To employ any device, scheme, or artifice to defraud; or (2) To engage in any transaction, act, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser or seller. Rule 10b–5, 17 C.F.R. § 240.10b–5, states: "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

5. O.C.G.A. § 51–6–1 states:

Fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party.

O.C.G.A. § 51–6–2 states:

(a) Willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury, will give him a right of action. Mere concealment of a material fact, unless done in such a manner as to deceive and mislead, will not support an action.

(b) In all cases of deceit, knowledge of the falsehood constitutes an essential element of the tort. A fraudulent or reckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false.

would have a viable state-law claim and an adequate remedy.

This case thus presents the Court with only one "available choice" for plaintiff under state law.[6] Because *Diamond* requires examination only of "available choices under state law," 709 F.2d at 1422, this Court must decide, therefore, whether it owes any consideration to the blue-sky law in light of that law's unavailability to plaintiff.

It is not entirely clear whether absence of any remedy at all for plaintiff under a particular state-law option is one of several criteria to be considered, or is a critical threshold question in the choice of an analogy. If a plaintiff has no remedy whatsoever by a particular route, then there would be no analogous state-law *claim,* and the inquiry mandated by *Diamond* and the *McNeal,* focused as it is upon claims, would not even begin. The "remedy" criterion would therefore concern only what type of remedy (rescission, damages, etc.) is available under various state-law claims that actually exist, and not whether a remedy exists.

The Eleventh Circuit has inconsistently ascribed weight to the existence or non-existence of *any* remedy under a particular state-law option in the selection of a state-law limitations period to govern a Rule 10b–5 claim. In *McNeal v. Paine, Webber, Jackson & Curtis,* the court of appeals made it clear that choice of a state law analogue depended upon the availability to plaintiff of a claim under the suggested state laws. The Court stated:

> In concluding that the cause of action available under Georgia's general fraud statute, rather than that available under the Georgia Securities Act of 1957, most closely resembles the 10b–5 cause of action relied upon here, we find determinative the fact that McNeal seeks damages against a broker, on account of alleged churning of his account, and does not seek rescission from an actual purchaser or seller of securities. Although the language of section 11 of the Georgia Securities Act of 1957 mimics that of Rule 10b–5 in prohibiting employment of "any device, scheme or artifice to defraud," the remedy made available by section 13 is expressly limited to an action for rescission by a purchaser against a seller. As such, the remedy is ineffective to a 10(b) plaintiff such as McNeal, who was allegedly injured by Paine, Webber's actions as an agent rather than as a principal.

598 F.2d at 893–4 (footnotes omitted).[7]

---

**6.** In this order the Court analyzes only the two state statutes suggested by the parties. The Court considers that a third state-law avenue of relief, not suggested or briefed by the parties, may in fact be most analogous to plaintiff's claim.

As noted earlier, the Georgia Securities Act does not provide an express remedy for violations of the fraud and manipulation section, O.C.G.A. § 10–5–12(d), which is modelled upon Rule 10b–5; nor does the Act provide an action in favor of sellers. Nevertheless, a catchall tort statute, O.C.G.A. § 51–1–8, states: "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action." That statute creates a remedy for the violation of section 10–5–12(d) and would be available to purchasers and sellers alike. *See Friedlander v. Nims,* 571 F.Supp. 1188, 1192 (N.D.Ga.1983). An action under section 51–1–8 would likely be most analogous to the federal claim asserted here.

An action under section 51–1–8, being for damages for injuries to personalty, would be subject to a four-year limitations period under O.C.G.A. § 9–3–31. The two-year limitation of the blue sky law, O.C.G.A. 10–5–14(c), applies only to actions brought pursuant to the civil liability section of that law, O.C.G.A. § 10–5–14(a) and (b), and therefore would not govern a section 51–1–8 action. Because the section 51–1–8 action was not addressed by the parties, because the action is not well-established in Georgia courts, and because its choice would not alter the result, the Court has not addressed it more fully or made it the basis of this decision.

**7.** That *McNeal* involved churning and concerned the Georgia Securities Act of 1957 does not affect its application to this case, which arises from a forced sale and concerns the Georgia Securities act of 1973 as amended. *McNeal* is important not for its conclusions regarding the now-obsolete Georgia securities statute, but for its reasoning, which applies equally well in the appraisal of any state law analogy issue. Indeed, the Eleventh Circuit reaffirmed the reasoning of *McNeal* in *Diamond. Diamond,* 709 F.2d at 1422, 1423.

The court of appeals then distinguished *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir.1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975), which had stressed the congruence between the specific remedy sought in plaintiff's Rule 10b–5 action and the remedy available to him under the Florida securities statute in applying the limitations period of that statute. In *McNeal,* the court continued:

> In this case, there is no "congruence" between the damages remedy sought by McNeal and the rescission remedy available under the Georgia Securities Act of 1957. Hence, the rationale of *Hudak* suggests that it is appropriate in this case to look to Georgia's general fraud law, which does provide a remedy equivalent to that sought by McNeal, to determine the limitations period applicable to McNeal's section 10(b) claim.

598 F.2d at 895.

In *Wood v. Combustion Engineering, Inc.*, where plaintiffs claimed that they had been fraudulently induced to exchange their stock, the court of appeals considered, as an "additional factor" in its decision to apply the Texas general fraud statute, the fact that the fraud statute, like Rule 10b–5, gave a cause of action to purchasers and sellers whereas the blue sky law favored only purchasers. 643 F.2d at 345–6.

An apparent shift occurred in *White v. Sanders.* In that case, brought by a purchaser, the court of appeals rejected the Alabama general fraud statute available to purchasers and sellers in favor of the blue sky statute which afforded claims only to purchasers. The court stated that "this difference alone has never been of controlling significance, especially where, as here, the suit is brought by a purchaser." 650 F.2d at 629; *see id.* at 632–633.

There are several reasons for discounting this statement. First, it was mere obiter dictum because the plaintiff in fact had a claim under either statute being considered; the Eleventh Circuit later explained *White*'s statement by pointing out that in that case "the state blue sky statute provided all the legally cognizable relief which the plaintiff requested." *Diamond,* 709 F.2d at 1423.

Second, *White* purported only to describe the policy then in effect rather than to announce a new one; but it apparently overlooked the explicit statement in *McNeal* that the availability of remedies was "determinative." *Compare McNeal,* 598 F.2d at 894, *with White,* 650 F.2d at 629. *White* did not overrule *McNeal.* In fact, it distinguished the earlier case on the very ground that the Georgia securities law rejected in *McNeal* "was simply not conducive to such a cause of action" as was asserted by plaintiff in *McNeal. White,* 650 F.2d at 631. It thus appears that in *White* the court of appeals both stated that the lack of a state-law claim was not a controlling consideration in the choice of a state-law analogue and then distinguished *McNeal* on the ground that the lack of a remedy under one state-law option was the controlling consideration. As a result of that contradiction, *White*'s discussion of the issue has little analytical force and questionable precedential effect.

Third, the history of *Diamond v. Lamotte* confirms the unsoundness of *White*'s statement. The district court in *Diamond* relied heavily upon *White,* and upon *O'Hara v. Kovens,* 625 F.2d 15 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981), which was cited by *White,* for the proposition that "the fact that there is no private cause of action provided for a violation of the section of Georgia securities law most like § 10(b) and Rule 10b–5 does not prevent application of the statute of limitations under Georgia securities law to the federal securities law claims before this court." *Diamond v. Lamotte,* [1982] Fed.Sec.L. Rep. (CCH) ¶ 98,807 at 94,124 (N.D.Ga. June 29, 1982). In affirming the district court's decision, the Eleventh Circuit stated: "We agree with the result below, but not necessarily the reasoning employed." 709 F.2d at 1422. The principal distinction between the Eleventh Circuit's reasoning and that of the district court is that the Eleventh Circuit abandoned the proposition gleaned by the district court from *White.*

Instead, the Eleventh Circuit in *Diamond* expressly followed *McNeal,* which had found availability of a cause of action "de-. terminative," *McNeal,* 598 F.2d at 894; *Diamond* made clear that the proper focus was upon the *claims* available to plaintiff under state law, and held that the remedy available to plaintiff under various state-law options was an important criterion. *Diamond,* 709 F.2d at 1422–1423.

A careful reading of *Diamond* reveals the *McNeal's* reasoning has survived the *White* dictum. In *Diamond,* the court of appeals stated:

> [*McNeal, White,* and *Wood*] dictate the method to ferret out the Georgia statute of limitations which should be applied in this case. First we categorize this action as a Georgia court would had this action or a similar action been brought in state court. In so categorizing the action, we compare the essential elements of the federal cause of action with those *available choices* under state law, looking not only to the elements of the anal[o]gous actions but also to the similarity of purposes behind the actions.

709 F.2d at 1422 (emphasis added). The court also said:

> In concluding that the *cause of actions available* under the Georgia Securities Act of 1973 is the most closely anal[o]gous to the Section 10(b) action relied upon here, we find that the essential and material elements of these causes of action are not significantly dissimilar.

*Id.* (emphasis added). The court of appeals further observed:

> Regarding the *relief available* to these plaintiffs against these defendants, we note that in *McNeal* it was determinative of the issue that the plaintiffs could not state a cause of action for "churning" against a broker under the Georgia Securities Act of 1957. In contrast, [in *White*] where the state blue sky statute provided all the *legally cognizable relief* which the plaintiff requested, the fact that Rule 10b–5 provided redress to a broader range of potential plaintiffs was not deemed to be "of controlling signifi-

cance." In this case, appellants, as purchasers, sought relief against the appellees either as principals or aiders and abetters. Clearly *such a claim is cognizable* under both the fraud and blue sky statutes. Additionally the appellants sought relief from various defendants on the theory of "controlling persons" liability.... *Such a claim is cognizable* under the blue sky statute but is generally not allowed in common law fraud actions.... Finally, the appellants sought return of their consideration paid for the TBA notes, interest and attorney's fees pursuant to their Rule 10b–5 claim. *Each of these measures of recovery is available* under the fraud and blue sky actions....

> Because no meaningful substantive distinction arises between the Section 10(b) and Rule 10b–5 action asserted here and *comparable actions available* under the common law fraud and blue sky statute, we are left with a comparison of the relative purposes served by various statutes.

709 F.2d at 1423–1424 (citations omitted) (emphasis added).

From a review of these cases, this Court can only conclude that the court of appeals in *White* began to venture upon a course, away from *McNeal,* from which it has since retreated. Although *White* did not claim to overrule *McNeal* and *Diamond* did not explicitly cut back on *White,* it is clear that *White's* obiter dictum was a short-lived departure from the principle applied by the court of appeals earlier and later. *Diamond's* emphasis on *available* choices and *cognizable* relief appears to have foreclosed the borrowing of a statute of limitations from a state law that affords a plaintiff no relief.

██ Although the Court concludes that the lack of any claim in favor of plaintiff under the Georgia Securities Act precludes application of a limitations period created by that Act to plaintiff's Rule 10b–5 claim, in an abudance of caution the Court proceeds to examine all the criteria announced in *Diamond.*

*Relief available to plaintiff from defendant*

As noted above, the Georgia Securities Act affords plaintiff no claim or remedy at all. On the other hand, the fraud and deceit statutes do give plaintiff a claim in this case and would afford him a complete remedy.

*Scienter*

As the Eleventh Circuit observed in *Diamond,*

> While scienter is required under Rule 10b–5 and common law fraud, ... it is not clear that there is such a requirement under the Georgia blue sky statute. Arguably, because the language of 97–112(a)(2) [now O.C.G.A. § 10–5–12(a)(2)] tracks the language of Section 410(a) of the Uniform Securities Act and Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2), scienter is not required. (Section 12(2) is premised on negligent wrongdoing.) However, it is also arguable that "recklessness" may have to be proved under Section 97–112(a)(2), *cf.* Ga. Code Ann. § 105–302 [now O.C.G.A. § 51–6–2] (reckless representations of facts as true is equivalent to a knowledge of the falsehood), which will suffice for scienter for 10b–5 purposes in this circuit.

709 F.2d at 1423 (citation omitted). Thus, the requirement of scienter under the state blue sky law is uncertain at best.

Under the general fraud statutes, scienter is required. O.C.G.A. § 51–6–2(b), which makes a reckless misrepresentation equivalent to a knowing one, is very close to the current scienter requirement of Rule 10b–5. *Cf. G.A. Thompson & Co. v. Partridge,* 636 F.2d 945, 960–1 (5th Cir.1981) (adopting recklessness standard of scienter in Rule 10b–5 actions).

*Reliance*

In *Diamond,* the court of appeals indicated that its appraisal of the Georgia statute provided no meaningful basis of comparison of the reliance element. 709 F.2d at 1423. In this court's view there is no reliance requirement for suits under section 10–5–14(a). That section states that a buyer may sue either to recover the consid-

eration paid or to obtain damages from any person who violates section 10–5–12(a), and imposes no requirement other than a purchase and payment of consideration or damage. Although section 10–5–12(a) provides that no violation occurs if the buyer knows of the untruths or omissions forbidden by that subsection, that is not the same as a reliance requirement.

Under the general fraud and deceit statutes, reliance is necessary to state a claim. Section 51–6–2 states, in pertinent part, that

> [w]illful misrepresentation of a material fact, made to induce another to act, *upon which a person acts* to his injury, will give him a right of action.

(Emphasis added). *See also Eckerd's Columbia, Inc. v. Moore,* 155 Ga.App. 4, 5, 270 S.E.2d 249 (1980) (reliance an element of fraud claim).

*Purposes*

The purposes of the statutes require close examination. The court of appeals in *Diamond* observed:

> [w]ithout doubt the blue sky statute is more closely attuned to securities fraud than generalized common law fraud. The blue sky cause of action serves to supplement the relief available to a defrauded purchaser of securities and therefore particularizes a securities fraud case.

709 F.2d at 1424 (citation omitted). The purpose discussed by the court of appeals is not relevant to this case: whereas in *Diamond* the Georgia Securities Act supplemented the relief available to a purchaser and thus particularized a securities case brought by a defrauded purchaser, that particularity is no great benefit when the Act particularly fails to afford an express remedy to sellers like plaintiff here.

The apparent purposes of the Georgia Securities Act are the regulation of sales of securities within the state and the protection of buyers through both general disclosure requirements and antifraud provisions, enforced either by the State or by securities purchasers.

The purpose of the fraud and deceit statutes is simply the protection of anyone who "acts" upon fraudulent inducements by others and suffers injury as a result.

The foregoing evaluation of the candidates for the state-law analogue to the Rule 10b–5 cause of action asserted by plaintiff in this case produces conclusions shown in the chart which follows.

| | Rule 10b–5 | O.C.G.A. § 10–5–14(a) (Georgia Securities Act) | O.C.G.A. §§ 51–6–1 and 51–6–2 (general fraud statutes) |
|---|---|---|---|
| REMEDY | yes | no | yes |
| SCIENTER | yes | no/uncertain | yes |
| RELIANCE | yes | no | yes |
| PURPOSES | protection of sellers and purchasers | regulation of securities sales and protection of purchasers | protection of any person acting upon, and injured by, fraud |
| LIMITATION | ---- | 2 years (§ 10–5–14(c)) | 4 years (§ 9–3–31) |

The chart makes clear that, with regard to the three "essential elements," *see Diamond,* 709 F.2d at 1423, a state-law claim under the Georgia Securities Act would be, of the two statutes suggested by the parties, the less analogous to that asserted by plaintiff under Rule 10b–5 in this case. The other state law avenue of relief, under the fraud and deceit statutes, O.C.G.A. §§ 51–6–1 and 51–6–2, appears analogous to plaintiff's federal claim here.

Actions for damages under the fraud and deceit statutes are, according to Georgia law, actions for injuries to personalty. *McNeal v. Paine, Webber, Jackson & Curtis,* 598 F.2d at 893 n. 10. As such, they are subject to a four-year limitation under O.C.G.A. § 9–3–31. *Id.* Therefore, plaintiff's claim, as it fits into the state catalogue of actions, would have a four-year limitations period.

▮ The Court must now consider whether a four-year period is inconsistent with federal policy. Although a four-year limitation on some Rule 10b–5 actions is inconsistent with a two-year limitation on other 10b–5 actions, neither that inconsistency, however, nor anything else makes this choice inconsistent with federal policy. *See supra* at 1445.

Uniformity in securities litigation is hardly a principle of federal policy. *See McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d at 891–2; *see generally* L. Loss, *Fundamentals of Securities Regulation* 1166–1168 (1983). The proposed Federal Securities Code promulgated by the American Law Institute would have provided, at section 1727, a uniform set of limitations periods in securities actions, *see* Loss, *supra* at 1168 and n. 19, but Congress has failed to act on the suggestion.

The Court sees no reason why a four-year period itself would be inconsistent with federal policy. The Fifth Circuit in *McNeal v. Paine, Webber, Jackson & Curtis,* 598 F.2d 888 (5th Cir.1979) applied a four-year limitations period.

The Court finds that the substantive state-law analogue to plaintiff's Rule 10b–5 claim in this case would be an action under the Georgia general fraud statutes, O.C.G.A. §§ 51–6–1 and 51–6–2. The Court therefore concludes that a four-year limitations period applies to plaintiff's federal securities claim. Accordingly, the Court

will grant plaintiff's motion to simplify issues and deny defendant's motion for summary judgment as to the statute of limitations question in plaintiff's federal securities claim.

## STATE–LAW CLAIMS

Defendant has also moved for summary judgment on Counts II and III of the complaint, which contain state-law claims.

Count II purports to state an implied cause of action under section 12(d) of the Georgia Securities Act, O.C.G.A. § 10–5–12(d). Defendant claims that the action is barred by the statute of limitations, arguing that the limitations period of O.C.G.A. § 10–5–14(c) applies to such an implied right of action.

As noted earlier, on pages 1446–1447, there is no express right of action under O.C.G.A. § 10–5–12(d). Defendant relies upon *Rothenberg v. Security Management Co.*, Civil Action no. C77–150A, slip op. (N.D.Ga. June 30, 1977) (Edenfield, J.), which stated that a Georgia court would apply the two-year limitation contained in the blue sky law to an implied action under section 12(d). This Court declines to follow *Rothenberg.*

Defendant also states that this Court ruled that a seller of securities could assert an implied private right of action for a violation of section 12(d) of the Georgia Securities Act, citing *Friedlander v. Nims*, 571 F.Supp. 1188, 1192 (N.D.Ga.1983) (Shoob, J.). The Court did not so rule. The Court instead held that O.C.G.A. § 51–1–8 created an express cause of action for a violation of section 12(d). *Nims*, 571 F.Supp. at 1192. For further discussion of this cause of action, see *supra* at 1447 n. 6.

The Court has found no Georgia case addressing the existence of any implied right of action under the Georgia Securities Act, even though the Act was passed over a decade ago. Indeed, the Court has uncovered no Georgia case that recognized an implied right of action based upon any Georgia statute or regulation.

In *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court stated:

> [P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims.... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.

(Citation and footnote omitted). And, as noted by Judge Magruder, "[f]ederal courts should not be overeager to hold on to the determination of issues that might be more appropriately left to settlement in state court litigation." *Strachman v. Palmer*, 177 F.2d 427, 433 (1st Cir.1949) (Magruder, J., concurring), *quoted in Gibbs*, 383 U.S. at 726 n. 15, 86 S.Ct. at 1139 n. 15.

■ Because a federal court should not determine so important an issue of state law as a matter of first impression, in the interest of comity and for a "surer-footed reading of applicable law," *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, the Court declines to exercise pendent jurisdiction over Count II of plaintiff's action; and because one of plaintiff's two state-law claims must be relegated to state court, it is appropriate that both claims go to state court together. In so doing, the Court notes that plaintiff would not be substantially prejudiced by its refusal to entertain the state-law claims in this forum. The relief sought in Counts II and III is substantially the same as that sought in Count I, and the proof would not differ significantly. Accordingly, the Court will dismiss without prejudice Counts II and III of plaintiff's complaint, and will deny defendant's motion for summary judgment on those counts as moot.

## CONCLUSION

For the reasons stated above, the Court DENIES defendant's motion to strike, GRANTS plaintiff's motion to simplify issues, and DENIES defendant's motion for

summary judgment; the Court DISMISS-ES without prejudice Counts II and III of the complaint.